Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **DAISY GUZMAN ROMAN**<br><br>Recurrida<br><br><br>v.<br><br>**MUNICIPIO DE CATAÑO A TRAVÉS DE SU ALCALDE HON. JULIO ALICEA VASALLO Y OTROS**<br><br>Peticionarios | KLCE202400014 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br><br>Caso Núm.:<br>**CT2023CV00024 (703)**<br><br><br>Sobre: **Daños y Perjuicios** |

Panel integrado por su presidenta la Jueza Domínguez Irizarry, la Jueza Rivera Pérez y el Juez Pérez Ocasio[1]

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece la parte peticionaria, el Municipio de Cataño, mediante el recurso de epígrafe, y nos solicita la revocación de una "*Resolución*" emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 21 de noviembre de 2023, notificada el 22 del mismo mes y año. En el referido dictamen, el foro primario declaró *No Ha Lugar* una solicitud de sentencia sumaria presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, *se deniega la expedición del auto solicitado.*

## I.

El 14 de febrero de 2023, la aquí recurrida, Daisy Guzmán Román, instó una "*Demanda*" sobre daños y perjuicios en contra del Municipio de Cataño (Municipio). En la misma, alegó que, durante

---

[1] Véase Orden Administrativa OATA-2024-010 del 17 de enero de 2024, donde se designa a la Jueza Camille Rivera Pérez, en sustitución de la juez Grace M. Grana Martínez.

la noche del 4 de mayo de 2022, sufrió una caída en la acera de la Calle Barbosa de Cataño, cerca al Edificio Número 115 y la Farmacia Rey. Aseveró que la caída se debió a un desnivel en la acera y a la falta de iluminación en el lugar. A su vez, planteó que la mencionada caída fue provocada por la negligencia del Municipio, el cual no le brindó el mantenimiento adecuado a la referida acera. En consecuencia, le solicitó al foro recurrido que condenara a la parte peticionaria a pagarle la cantidad de ciento cuarenta mil dólares ($140,000) por los daños físicos y emocionales sufridos, más las costas, los gastos del proceso y una suma por concepto de honorarios de abogado.

El 8 de junio de 2023, el Municipio contestó la demanda. Esencialmente, sostuvo que mantenía las áreas bajo su control en condiciones adecuadas, y que había sido diligente con el mantenimiento de sus aceras. De ese modo, propuso que el accidente ocurrió por la propia negligencia de Guzmán Román.

Tras varias incidencias procesales, el 28 de septiembre de 2023, el Municipio presentó una *"Moción de Sentencia Sumaria"*. En el pliego, afirmó que, contrario a lo previamente expuesto, la acera en cuestión no estaba bajo su control, sino que le pertenecía al Estado Libre Asociado de Puerto Rico (Estado). A tenor con lo anterior, indicó que en el presente caso lo que procedía era desestimar la acción por vía sumaria. Para sustentar su posición, unió a su moción una *"Certificación sobre Titularidad o Jurisdicción"* con fecha del 12 de septiembre del 2022, suscrita por José Borroto Cáceres, quien para entonces era el director del Departamento de Obras Públicas del Municipio. La misma, afirmaba lo siguiente:

[…]

- La acera de la Ave. Barbosa cerca del Edificio #115 y la Farmacia Rey en el sector Pueblo en Cataño *no está bajo el control, cuidado y mantenimiento del municipio.*

- La acera de la Ave. Barbosa cerca del Edificio #115 y la Farmacia Rey en el sector Pueblo en Cataño *le pertenece y es jurisdicción del Estado.*

- Al momento de esto hechos el municipio, ni ninguna compañía privada no realizaba proyectos, mejoras o reparaciones en el lugar.[2] (Énfasis suplido).

A esos efectos, solicitó al tribunal de instancia que declarara con lugar su solicitud de sentencia sumaria.

El 17 de noviembre de 2023, Guzmán Román se opuso a la sentencia sumaría. Relató que, luego de que le notificó extrajudicialmente al Municipio sobre el accidente, este le remitió una *"Certificación sobre Titularidad o Jurisdicción"* con fecha de un día antes a la indicada en la certificación que se anejó al petitorio sumario; es decir, el 11 de septiembre de 2022. Destacó que la referida certificación era textualmente idéntica a la del 12 de septiembre de 2023, excepto que señalaba *que la acera estaba bajo el control, cuidado y mantenimiento del Municipio.* Así, pues, arguyó que existía disputa en cuanto a la razón de la incongruencia, y sobre cuál de las dos certificaciones era la legítima. Además, planteó que existía controversia en cuanto a si la segunda certificación era fraudulenta, y si el foro primario podía considerarla como evidencia. En consecuencia, le suplicó al foro primario que declara sin lugar la solicitud de sentencia sumaria.

Para sustentar sus argumentos, Guzmán Román acompañó con su escrito la misiva que le envió al Municipio, el 29 de julio de 2022, sobre su intención de demandarlo por el accidente ocurrido en la acera.[3] Igualmente, incluyó la *"Certificación sobre Titularidad o Jurisdicción"* con fecha del 11 de septiembre de 2022.[4]

Evaluadas las posturas de las partes, el 21 de noviembre de 2023, notificada el 22 del mismo mes y año, el tribunal de instancia

---

[2] Apéndice del recurso, pág.19.
[3] Íd., pág. 29.
[4] Íd., pág. 30.

emitió la "*Resolución*" que nos ocupa. Mediante el referido dictamen, declaró *No ha Lugar* la solicitud de sentencia sumaria presentada por la parte peticionaria. Concluyó que la postura del Municipio fue controvertida por la certificación emitida un día antes a la unida a su solicitud, la cual afirmaba que la acera de la Calle Barbosa era de su propiedad. Por otro lado, destacó que la certificación producida por el Municipio tenía fecha de más de un año previo a la presentación de su petitorio, por lo cual había controversia en cuanto a la razón de la demora de presentar la misma.

Inconforme, el 7 de diciembre de 2023, la parte peticionaria solicitó reconsideración. Explicó que, a tenor con la Ley de Travesía, Ley Núm. 49 de 1 de diciembre de 1917, 9 LPRA sec. 12 *et seq.*, entendía que, a pesar de que las carreteras fuesen de jurisdicción estatal, los municipios ejercían el control de todas las aceras dentro de sus límites, y tenían la responsabilidad de mantenerlas. Sin embargo, en la reciente decisión del Tribunal Supremo en el caso de *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, 212 DPR ___ (2023), se aclaró que las aceras son una extensión de las calles. Por tanto, si la carretera era estatal, la acera igualmente lo era. Según sostuvo y evidenció, luego de emitirse la referida decisión, envió un correo electrónico a Guzmán Román, el 28 de agosto de 2023, en el cual manifestó lo anterior y, presuntamente, anejo una certificación de titularidad enmendada.[5] En virtud de lo expuesto, le peticionó al tribunal de instancia que reconsidera su determinación.

El 8 de diciembre de 2023, el foro primario emitió una "*Resolución*" en la cual declaró *No Ha Lugar* la reconsideración.

---

[5] Íd., pág. 40.

Aún en desacuerdo, 4 de enero del año en curso, el Municipio acudió ante nos mediante el recurso del epígrafe y realizó el siguiente planteamiento:

> El Art. 1.053(g) del Código Municipal de Puerto Rico concede inmunidad a los municipios por acciones legales en su contra cuando ocurren accidentes en las carreteras o aceras estatales. Erró el Tribunal de Primera Instancia al no aplicar dicha inmunidad concedida a los municipios y por ende denegar la moción de sentencia sumaria del Municipio de Cataño, ante la ausencia de jurisdicción, control y mantenimiento de éste sobre cierta carretera estatal y, por ende, de la acera adyacente a la misma, lugar en que la recurrida alega sufrió una caída.

Recibido el recurso, ordenamos a la parte recurrida a presentar su posición conforme dispone la Regla 37 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XII-B, R. 37. En cumplimiento, el 29 de enero de 2024, Guzmán Román compareció en oposición.

Examinado el expediente, procedemos a resolver.

## A. *Certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este

apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[...]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros,* supra; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Véase, además, *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros,* supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* funge como complemento a la Regla 52.1 de Procedimiento

Civil, *supra. Torres González v. Zaragoza Meléndez,* supra, pág. 849.

La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio, y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 (2005). El foro apelativo deberá evaluar la corrección de la decisión recurrida, al igual que la etapa del procedimiento en que es presentada. Ello, para determinar si es apropiado intervenir, y evitar ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

Finalmente, precisa señalar que nuestro Tribunal Supremo, ha expresado que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el

tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Responsabilidad de los municipios sobre el mantenimiento de las aceras

La Ley de Travesías, supra, se promulgó con el fin de ordenar al Secretario de Transportación y Obras Públicas a conservar los trozos de carreteras insulares que atraviesan las zonas urbanas de los pueblos. Sin embargo, el Artículo 2 del referido cuerpo normativo les concedió jurisdicción a los municipios sobre las dos zonas urbanizadas a ambos lados de la travesía. De este modo, los municipios podían construir edificios y aceras en las mencionadas zonas, de acuerdo con las disposiciones de sus ordenanzas municipales. 9 LPRA sec. 13. En virtud de lo anterior, se entendía que, a pesar de que una carretera fuese potestad del Estado, el control sobre sus aceras recaía en el municipio. *Oliver v. Municipio de Bayamón*, 89 DPR 442, 445 (1963), *Vélez v. La Capital*, 77 DPR 701, 708 (1954).

Ahora bien, la Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico, Ley Núm. 54 de 30 de mayo de 1973, aclaró que, las carreteras están integradas por la servidumbre de paso, la cual definió como una superficie de terreno ocupada por la carretera, que incluye el área de rodaje, paseos, cunetas y terrenos adyacentes hasta la colindancia con la propiedad privada. Artículo 1. 02 (a) y (f), 9 LPRA sec. 2102. Predicado en ello, el Tribunal Supremo concluyó, recientemente, que el concepto carretera, según definido por la Ley Núm. 54, *supra*, contempla las

aceras como parte de éstas. A tales efectos, si la carretera es de jurisdicción estatal, la acera igualmente lo es. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra.

Quedando plasmado lo anterior, y en lo pertinente al presente caso, debemos señalar que el Código Municipal de Puerto Rico, Ley Núm. 107-2020, indica que no estarán autorizadas las acciones contra un municipio por daños y perjuicios a la persona o la propiedad, cuando ocurran accidentes en las carreteras o aceras estatales. Artículo 1.053 (g), 21 LPRA sec. 7084. La referida disposición permaneció idéntica a la incluida en el cuerpo normativo predecesor, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 *et seq.* (derogada). La Ley Núm. 81, *supra*, se enmendó para añadir a su Artículo 15.005 (g), 21 LPRA sec. 4705, la limitación que nos ocupa, luego de que se concluyera que era injusto que los municipios tuviesen que responder por daños y perjuicios ocurridos sobre infraestructura que no estaba bajo su control y atención total. Así, pues, se entendió meritorio proteger a los municipios de los accidentes que pudieran ocurrir en carreteras y aceras a consecuencia de la falta de atención y mantenimiento por parte del Estado. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra.

### C. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Insurance* Company, 2023 TSPR 118, 212 DPR ___ (2023); Oriental *Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *González Meléndez v. Municipio*

*Autónomo de San Juan y otros*, 2023 TSPR 95, 212 DPR ___ (2023); Acevedo *Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Oriental Bank v. Caballero García,* supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales

y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, *supra. Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos

materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la

sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa. *Íd.* De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.*

### III.

El Municipio de Cataño nos solicita que revisemos la negativa del tribunal de instancia de declarar con lugar su solicitud de sentencia sumaria y desestimar el caso de epígrafe.

Hemos evaluado este recurso *de novo,* conforme exige la normativa antes expuesta, y *concluimos que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna.*

En este caso, la parte recurrida presentó una *Demanda* en contra del Municipio, luego de sufrir una caída en la acera de la Calle Barbosa de Cataño. El referido Municipio, supuso que era responsable por lo ocurrido en la mencionada acera, y que ejercía control sobre la misma. A tales efectos, emitió una *Certificación sobre Titularidad o Jurisdicción,* mediante la cual afirmó que la acera en cuestión era de su propiedad. Ahora bien, luego de aclararse el derecho aplicable al presente caso, el Municipio entendió que, por alegadamente ser la Calle Barbosa de jurisdicción estatal, quien tenía el control y era responsable de su acera era el Estado. A la luz de lo anterior, le envío a la parte recurrida una certificación de titularidad enmendada y presentó la solicitud de sentencia sumaria que nos ocupa.

De un análisis de la totalidad de la prueba, coincidimos con el foro de instancia en cuanto a que aún existen controversias que impiden disponer de este caso por vía sumaria. Por ejemplo, existe disputa en cuanto a si la Calle Barbosa es de jurisdicción estatal.

Conforme discutimos, el ordenamiento jurídico vigente le confiere a los municipios inmunidad en reclamaciones por daños y perjuicios a la persona o a la propiedad, cuando ocurren accidentes en las aceras estatales. Ahora bien, según concluyó nuestro Alto Foro en *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra, para saber quién tiene el control sobre una acera, es necesario determinar si la carretera en la cual se encuentra es propiedad del Estado.

En virtud de que la parte peticionaria no demostró que el presente recurso se encuentra entre las instancias contempladas en

la Regla 40, *supra,* la cual nos permite entender sobre el mismo, *denegamos expedir el auto de certiorari* que nos ocupa.

**IV.**

Por los fundamentos que anteceden, *se deniega la expedición del recurso de certiorari solicitado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones